IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Book Dog Books, LLC, et al.,

      Plaintiffs,

  v.

Cengage Learning, Inc., et al.,

      Defendants.

Case No. 2:12-cv-1165

Judge Graham

Opinion and Order

This matter came before the court on the motion of plaintiffs Book Dog Books, LLC and SPL Management, LLC for a temporary restraining order and preliminary injunction requiring defendants Cengage Learning, Inc. and Pearson Education, Inc. to supply plaintiffs with college textbooks before the start of the 2013 winter semester at The Ohio State University.

The parties have briefed the motion and have submitted evidentiary materials. The court conducted an evidentiary hearing on December 28, 2012 in which the parties examined fact witnesses and presented legal argument. At the conclusion of the parties' presentation on December 28, 2012, the court delivered its findings of fact and conclusions of law from the bench and denied plaintiffs' motion for a temporary restraining order and preliminary injunction. The following order memorializes the court's decision.

I.      **Factual Findings**

Plaintiff Book Dog Books is an Ohio limited liability company with its principal place of business in Columbus, Ohio. Philip Smyres is the founder, sole member, and CEO of Book Dog Books. Book Dog Books conducts business as Used Book Exchange (UBX) and Buckeye Books, which are bookstores located near the Ohio State campus. Plaintiff SPL Management is a Florida limited liability company, whose founder, managing member, and CEO is Philip Smyres. SPL is engaged in the online sale of discounted college textbooks.

Defendant Cengage Learning is a Delaware corporation with its principal place of business in Connecticut. Defendant Pearson Education is a Delaware corporation with its principal place of business in New Jersey. Both defendants are in the business of textbook publishing, supply, and distribution.

UBX and Buckeye Books ("the Bookstores") have had accounts with defendants for many years, since as early as the mid-1990s. In advance of each academic term the Bookstores order text books from many sources, including defendants. In July 2012, the Bookstores attempted to place an order with defendants, but were unable to complete the order. They contacted defendants and were given the impression that there was a technical problem that caused their orders not to be processed. See Smyres Aff., ¶ 9.

The Bookstores communicated further with defendants from August to November 2012. On August 8, 2012, Smyres sent an email to Pearson stating that the bookstores needed to place an order before the fall semester. See Defs.' Ex. 11. By this time Pearson, as well as Cengage, had decided to close all accounts associated with Smyres, including those of the Bookstores. Pearson's Vice President and Senior Counsel, John Garry, testified that Pearson informed Smyres of the closing of the accounts sometime in late July or early August 2012. In response to the August 8 email, Pearson responded to Smyres that it was no longer doing business with him. Cengage's witness, William Sampson, likewise testified that Cengage communicated to Smyres in July or August 2012 that it would no longer do business with him.

At some point after these communications with Pearson, the Bookstores came to the realization that their difficulties in placing orders with defendants were not technical ones, but were related to an ongoing copyright infringement dispute between defendants and another business belonging to Smyres, TextbooksRUs, which operated under the Book Dog Books umbrella.

In March 2008, defendants (as well as two other publishing companies) brought suit against Smyres and TextbooksRUs in the United States District Court for the Southern District of New York. The complaint alleged that Smyres and TextbooksRUs had unlawfully purchased, distributed, and sold counterfeit copies of the publishers' copyrighted works. Counterfeit copies are ones made without authorization of the copyright owner and are also referred to as pirated copies. The complaint further alleged that Smyres and TextbooksRUs had unlawfully imported, distributed, and sold foreign edition prints of the publishers' copyrighted works. Such foreign edition prints were

not authorized for resale in the United States and are also referred to as gray market copies. The parties settled that lawsuit through a settlement agreement dated July 11, 2008. See Defs.' Ex. 4. The parties to the agreement also included Book Dog Books, UBX, and Buckeye Books.

In August 2011, counsel for Pearson and Cengage notified Smyres that the publishers believed that TextbooksRUs and Smyres were engaging in the unlawful distribution of counterfeit textbooks. See Pls.' Ex. 1; Defs.' Ex. 9. Ensuing communications between counsel for the parties included a disclosure of books distributed by TextbooksRUs. See Defs.' Ex. 10. The parties then engaged in mediation efforts, but the 2011 allegations of copyright infringement still remain unresolved, though no legal action has been taken by the publishers against Smyres or his companies.

In June 2012 Smyres attempted to open new accounts with Pearson and Cengage under the name SPL Management. When representatives at those companies discovered that Smyres was associated with SPL, the accounts were denied. See Defs.' Ex. 8.

The parties engaged in discussions from August to November 2012 to resolve their dispute. Neil Mooney, general counsel for the bookstores, testified that he had believed that the allegations of copyright infringement concerned only TextbooksRUs. He further testified that he had believed that the parties could resolve their dispute, such that the Bookstores would be able to order books for the 2013 winter semester. Mooney stated that it was not until December 2012 that the Bookstores knew for certain that they would not be able to order books from defendants. See also Smyres Aff., ¶¶ 10-15 (recounting the efforts made from August to December 2012 to resolve the dispute).

Smyres states in his affidavit that he had received "assurances" from defendants during the August to December 2012 timeframe that led him to believe that the "issues going on with the Bookstores' accounts . . . would be resolved prior to the winter semester rush." Smyres Aff., ¶ 10. Smyres states that absent an injunction requiring defendants to supply textbooks to the Bookstores, they will "suffer significantly in terms of lost sales and also lost reputation as a reliable source of discount college textbooks at Ohio State." Id., ¶ 22. "If the Bookstores were forced to seek book stocks from other sources at higher prices . . . [it] would result in the Bookstores' inability to offer discount sales, which is the entire basis of its retail model." Id., ¶ 26. Smyres also states that absent

an injunction he will be unable to purchase "custom books" – those course materials whose content is made for particular courses at Ohio State.

Witnesses for defendants testified that Pearson and Cengage are not the exclusive sources for obtaining the titles that the Bookstores seek to purchase. The books can be obtained through wholesalers like Follett, Missouri Book Exchange, and Barnes & Noble. In particular, Barnes & Noble's policy is to sell custom books to other bookstores. Defendants' witnesses testified that they have never made any contract, promise, or policy guaranteeing that they will supply books to the Bookstores. They offered evidence that the terms and conditions of their standard order forms state that all orders are subject to acceptance and may be changed or cancelled by the defendants at any time. See Defs.' Exs. 1, 2. Defendants testified that they have refused to accept future orders with Smyres and his businesses because their investigations have produced evidence that he has been dealing in counterfeit books.

## II.     Conclusions of Law

### A.     Standard

Temporary restraining orders and preliminary injunctions are available under Rule 65 of the Federal Rules of Civil Procedure. They are extraordinary remedies that are governed by the following considerations: "(1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a stay, (3) whether granting the stay would cause substantial harm to others, and (4) whether the public interest would be served by granting the stay." Ohio Republican Party v. Brunner, 543 F.3d 357, 361 (6th Cir. 2008); see also Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 129 S.Ct. 365, 374 (2008). "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." Gonzales v. Nat'l Bd. of Med. Examiners, 225 F.3d 620, 625 (6th Cir. 2000); accord Jolivette v. Husted, 694 F.3d 760, 765 (6th Cir. 2012).

"The party seeking the preliminary injunction bears the burden of justifying such relief, including showing irreparable harm and likelihood of success." McNeilly v. Land, 684 F.3d 611, 615 (6th Cir. 2012).

**B.  Likelihood of Success on the Merits**

The Bookstores proceed on a theory of promissory estoppel. They argue that defendants promised them that they would supply books on an ongoing basis. They further argue that the parties have had a course of dealing whereby the Bookstores have always been able to use their accounts with the defendants to order books. Relying on those accounts being open, the Bookstores have built a business model in which they offer discounted textbooks to college students.

Promissory estoppel is an equitable doctrine for preventing the harm resulting from reasonable reliance upon false representations. Karnes v. Doctors Hosp., 51 Ohio St.3d 139, 142, 555 N.E.2d 280 (Ohio 1990). The party asserting promissory estoppel bears the burden of proving, by clear and convincing evidence, all of the elements of the claim. Swank v. Swank, 2011 WL 6966424, at *13 (Ohio Ct. App. 5 Dist. Dec. 30, 2011).

The elements necessary to establish a claim for promissory estoppel are:

(1) a promise clear and unambiguous in its terms;

(2) reliance by the party to whom the promise is made;

(3) the reliance must be reasonable and foreseeable; and

(4) the party claiming estoppel must be injured by the reliance.

Stull v. Combustion Engineering, Inc., 72 Ohio App.3d 553, 557, 595 N.E.2d 504 (Ohio Ct. App. 1991); Patrick v. Painesville Commercial Properties, Inc., 123 Ohio App.3d 575, 583, 704 N.E.2d 1249 (Ohio Ct. App. 1997); Restatement of the Law 2d, Contracts, Section 90 (1973).

The court finds that the Bookstores have failed to produce sufficient evidence of a promise, either express or implied, that defendants would supply books for the 2013 winter semester. Smyres' statements that he received "assurances" are vague and do not support a theory of promissory estoppel. He is unable to identify any specific promise made to him by defendants that they would supply books to the Bookstores on a going-forward basis. At most, he received assurances that defendants would try to resolve their differences with Smyres, not that they would re-open his accounts to allow him to make future orders. See Smyres Aff., ¶¶ 9-10.

Defendants, in contrast, offered testimony that they specifically told Smyres in July or August 2012 that they were closing all of his accounts. Moreover, their standard terms and conditions made clear that they were making no promise or obligation to do ongoing business with him or supply books in the future. Indeed, the parties' past course of dealing included the 2008 copyright dispute in which defendants testified that they froze the accounts associated with Smyres and refused to supply him with books until they reached a settlement. Plaintiffs are unable to overcome defendants' clear showing that they had made no promise, express or implied, to supply books to the Bookstores for the 2013 winter semester.

The course of the parties' dealings during the 2008 dispute also undermines any claim by the Bookstores that they reasonably relied on defendants' alleged assurances. During that dispute the defendants ceased supplying books to Smyres. A similar dispute arose in 2011 and Smyres was informed no later than August 2012 that his accounts were closed. In light of the 2008 dispute and the August 2012 notices that the accounts were closed, the Bookstores are unable to demonstrate a likelihood of success on the merits that it was reasonable for them to proceed on the belief that defendants would supply them with books for the winter semester. In other words, the parties' course of dealing put the Bookstores on notice that if defendants lost confidence in Smyres, they would simply stop doing business with him. And defendants made clear to Smyres from August to November 2012 that they did not accept his protestations of innocence. They had a reasonable basis for believing that he was dealing in counterfeit books and thus lost trust in him as a customer. Though Smyres may have hoped to resolve the matter before winter semester, such a hope does not suffice to support a claim for promissory estoppel.

Accordingly, the court concludes that the Bookstores have failed to demonstrate a likelihood of success on the merits as to their promissory estoppel claim.

The court makes the same finding as to plaintiff SPL Management. In June 2012 Smyres tried to open accounts in the SPL name with defendants. Defendants refused to allow Smyres to open the accounts, and there is no evidence whatsoever that defendants ever made a promise to supply SPL with books for the 2013 winter semester.

### C. Irreparable Injury

The court also finds that plaintiffs have failed to demonstrate an irreparable injury absent injunctive relief. The uncontroverted evidence is that the Bookstores have other sources from which they could order the titles they would have ordered from defendants. The Bookstores have always ordered books from multiple sources, and the titles published by defendants, including custom books, are available through wholesalers. Moreover, the court finds that plaintiffs could have taken steps to avoid the situation for which they now seek an injunction. Defendants gave notice to Smyres in July or August 2012 that they were closing his accounts. He had four or five months to make alternative arrangements in sourcing books.

Smyres does not deny that the books can be obtained through other avenues. He instead argues that it will be more expensive and diminish the Bookstores' reputation as a reliable source of discounted books. See Smyres Aff., ¶¶ 22, 26. He fears that the lost sales will force him to lay off employees and possibly close the stores.

It is well established that injuries which are compensable by monetary damages do not rise to the level of an irreparable injury required for issuing injunctive relief. See Monsanto Co. v. Geerston Seed Farms, __ U.S. __, 130 S.Ct. 2743, 2756 (2010); Sellers v. Univ. of Rio Grande, 838 F.Supp.2d 677, 680 (S.D. Ohio 2012). Thus, the fact that absent an injunction the Bookstores will pay higher prices to obtain the books is not alone sufficient. As to the arguments concerning diminished reputation and workforce reductions, plaintiffs have offered nothing more than pure speculation. Plaintiffs provided no evidence from which a reasonable estimation or calculation could be made regarding the likely loss of customers, lost revenue, or workforce reduction. See Winter, 555 U.S. at 22 (the movant must show that "irreparable injury is *likely* in the absence of an injunction"; a mere possibility of injury is not enough) (emphasis in original).

### D. Other Considerations

Finally, the court finds that the public interest will be served by denying the request for injunctive relief. It is not in the public interest to require defendants, who are the copyright owners of their texts, to do business with entities associated with an individual for whom defendants have a reasonable basis to believe has dealt in counterfeit books.

7

**III.    Conclusion**

Accordingly, plaintiffs' motion for a temporary restraining order and preliminary injunction (doc. 2) is DENIED.

s/ James L. Graham<br>
JAMES L. GRAHAM<br>
United States District Judge

DATE: January 4, 2013